JOY COSSICH LOBRANO, Judge.
_JjThe claimant, Montrell Roberts, appeals a judgment of the Office of Workers’ Compensation (“OWC”) denying her claim for supplemental earnings benefits (“SEB”), statutory penalties and attorney’s fees. For the reasons that follow, we affirm.
Ms. Roberts fractured her right wrist in a work-related accident on April 25, 2008[1], while employed as a Social Services Analyst II (“SSA2”) with the State of Louisiana, Department of Social Services, Office of Family Support (“OFS”). As an SSA2, Ms. Roberts served as a case manager, working with clients in various social service programs administered by the state. She was required to operate a firearm and prepare reports, case summaries, correspondence and court documents. In addition to extensive typing and writing, Ms. Roberts had to pull, lift, carry and re-shelve voluminous case files each day.
Following the accident, Ms. Roberts was treated at Ochsner Hospital by Mr. Jack Reid, a certified physician assistant, and Dr. Jefferson Kaye, an orthopedic |2surgeon. Dr. Kaye subsequently ordered Ms. Roberts to undergo a Functional Capacity Examination (“FCE”) on February 13, 2009. On May 7, 2009, Dr. Kaye and Mr. Reid met with Ms. Roberts to review the results of the FCE. Based on the results[2], Dr. Kaye imposed permanent work restrictions of no lifting in excess of *572 ten pounds (10 lbs.), no writing beyond 24 minutes, and no typing beyond 17 minutes per work day.
Ms. Roberts was also required to obtain a second medical opinion from her employer’s choice of a physician. The OFS selected Dr. Harold Stokes, an orthopedic surgeon, who examined Ms. Roberts on December 18, 2008. Dr. Stokes concluded that Ms. Roberts could return to work as a social worker, but would have difficulty writing for prolonged periods of time and, thus, suggested that she be allowed to dictate her reports. He assigned a ten percent (10%) to fifteen percent (15%) permanent impairment to Ms. Roberts’ right upper extremity.
Based on an average weekly wage of $915.59, the OFS paid Ms. Roberts temporary total disability benefits (“TTD”) of $522.00 per week from May 3, 2008 until April 19, 2009[3], when she allegedly reached maximum medical improvement and was released to return to duty with some restrictions. Although the OFS claimed that it had arranged to accommodate Ms. Roberts at work within the restrictions to resume her position as a SSA2, Ms. Roberts did not return to work and retired from the work force[4].
|3Ms. Roberts filed a Disputed Claim for Compensation in May 2009, seeking SEB, claiming the OFS could not accommodate her work restrictions and, therefore, she was forced to retire because her worker’s compensation benefits had been terminated and she had no source of income.
Following a trial, the workers’ compensation judge dismissed Ms. Robert’s claim, finding she voluntarily removed herself from the work force and was not entitled to SEB. The judge also denied her claim for statutory penalties and attorney’s fees, concluding the OFS acted reasonably in handling her claim.
On appeal, Ms. Roberts argues that the trial court erred in denying her claim for SEB. Specifically, Ms. Roberts contends the trial court erred in determining that the OFS could accommodate her permanent work restrictions and that she “voluntarily” retired.
The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793, p. 4 (La.1/9/11), 56 So.3d 170, 174. La. R.S. 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Id., GO-2793 at 5, 56 So.3d at 174. Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs, must Improve, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in her or the employer’s community or reasonable geographic region. Id.; La. R.S. 23:1221(3)(c) (i).
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 557, the Louisiana Supreme Court, discussing the meaning of “job *573 availability,” held that an employer may discharge its burden of proving “job availability” under La. R.S. 23:1221(3)(c)(i) by establishing, at a minimum, by competent evidence:
(1) the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
Id., 96-2840, 696 So.2d at 557.
The Court defined a “suitable job” as “a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant’s age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.” Id. (Footnote omitted).
This Court has held that, generally, an employee offered light-duty work at the same wage would not be entitled to SEB. Dabney v. Boh Brothers |sConstruction Company, 97-1041, 97-2502 (La.App. 4th Cir.3/11/98), 710 So.2d 1106, 1112 (citation omitted).
“Retirement” occurs for purposes of SEB entitlement when the worker either “withdraws from the work force” or draws old age social security benefits, whichever comes first. Allen v. City of Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123, 126-27. An employee who chooses pension benefits as opposed to returning to work has retired. Id. Moreover, an employee who expresses his intention to both retire, or stop working, and not look for other employment and who makes no effort to find another job has retired within the meaning of La. R.S. 23:1221. Randazzo v. Boh Brothers Construction Company, 2001-1953, at p. 5 (La.App. 4th Cir.3/27/02), 814 So.2d 671, 675 (citation omitted). However, if the injury causes the claimant’s unemployment, the employee is not retired for purposes of limiting benefits. Id. (Citations omitted). Retirement limiting benefits connotes withdrawals based on age or years of service in some type of pension. Id. When the injury and a doctor’s failure to release an employee to return to work cause the employee to decide to stop work or failure to return to work, such a withdrawal from the work force is not voluntary. Id., at 5-6, 814 So.2d at 675 (citation omitted).
Determination of whether an employee has withdrawn from the work force for purposes of SEB is based on many factors, including age; the circumstances of each case control. Mason v. Auto Convoy, 27,444 (La.App.2d Cir.11/1/95), 662 So.2d 843, 846. The “retirement” which restricts SEB payments is that based upon age or years of service, resulting in some type of pension, and does not refer to unemployment as a result of an employment-related injury. Margin v. Barthelemy, 93-2224 (La.App. 4th Cir.5/17/94), 638 So.2d 291, 299.
| c,At the hearing, Ms. Roberts testified that she was forced to retire because her wrist injury prevented her from returning to work in her pre-accident capacity and the OFS could not accommodate the permanent work restrictions imposed by Dr. Kaye. However, the OFS offered into evidence documentation from her treating physician that indicated by April 2009 she could return to work with certain restrictions, which included no lifting more than ten pounds, no writing beyond 24 minutes, and no typing beyond 17 minutes. The *574 OFS also submitted e-mail correspondence between the case worker handling Ms. Roberts’ workers’ compensation claim and the OFS human resources supervisor, indicating the OFS had offered Ms. Roberts her pre-injury job modified to accommodate the medically imposed restrictions, and that she did return to work for two days, working a few hours each day, but then never returned. Most significant, the OFS offered into evidence a copy of the Department of Social Services OFS “Personnel Action Form” completed and signed by Ms. Roberts, indicating she selected “Voluntary” rather than “Involuntary” retirement.
The workers’ compensation judge set forth his findings of fact in oral reasons for judgment, stating:
Although the term “involuntary retirement” was bantered about during the trial the employee chose to retire instead of returning to work as a Social Service Analyst II.
The evidence is clear that the employee was released to her employment at Social Services with mild restrictions.
These restrictions are found to be no lifting more than ten pounds, no writing beyond 24 minutes and no typing beyond 17 minutes.
This employer was required to accommodate this injured employee for a period of six [months].
The evidence also illustrates the employer was posturing to fulfill its obligation.
|7The evidence adduced at trial and from the testimony by the employee illustrates the employee clearly chose to retire. She was clearly eligible and fully vested.
It is apparent to this Court, as supported by the evidence, the employee could perform sedentary duties as required by her job description subject to the above-mentioned conditions.
These accommodations by the employer would have transitioned to the employee to her maximum capacity at the end of a six-month period. That ultimately is the goal.
It goes without saying that we will never know if the employee’s transition would have been complete or if the accommodations would have been within her doctor’s restrictions.
The Defendant’s Exhibit Number 3 [OFS Personnel Action Form] clearly states the retirement by the employee was voluntary. This calls into question the veracity of the employee’s repeated testimony to the contrary. The employee candidly testified she never returned to her position but instead went directly to HR to complete her retirement documentation.
In this case, the offer of light duty to the employee was within her medical restrictions and limitations. Thus her claim for supplemental earnings benefits was properly denied.
[[Image here]]
The claimant in this case was able to return to work at the previous rate of pay. She elected to retire in lieu of return.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks, supra, 96-2840, 696 So.2d at 556 (citations omitted). In applying the manifest error — clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Id. If the factfinder’s findings are reasonable in light of the record reviewed in its en *575 tirety, the court of appeal may not reverse. Id.
| sAfter reviewing the record in its entirety, we find the medical evidence as well as Ms. Roberts’ employment and retirement records support the workers’ compensation judge’s finding that Ms. Roberts chose to voluntary retire from the work force rather than return to her pre-accident job, which the OFS modified to accommodate her medical restrictions. Therefore, we find no error in the judgment of the Officer of Workers’ Compensation denying Ms. Roberts’ claim for SEB. Because Ms. Roberts was not entitled to SEB, we find the workers’ compensation judge properly denied her claim for statutory penalties and attorney’s fees.
Accordingly, the judgment of the Office of Workers’ Compensation is affirmed.
AFFIRMED

. The OWC Disputed Claim for Compensation Form 1008 filed by Ms. Roberts indicates the work-related accident occurred on April 24, 2008; however, the judgment, appellate briefs, and other documents in the record state the accident occurred on April 25, 2008.

. The FCE examiner had determined that Ms. Roberts could work in a sedentary capacity, but noted typing and writing limitations and restrictions,

. The State paid a total of $26,249.13 in TTD.

. Ms. Roberts had nearly twenty-nine (29) years of service with the State of Louisiana when she retired.