672 So.2d 1112 (1996)
Leo GLYNN
v.
The CITY OF NEW ORLEANS.
No. 95-CA-1353.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1996.
*1113 Magdalen Blessey Bickford, Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, for Plaintiff/Appellee.
Avis Marie Russell, City Attorney, Neil J. Kohlman, Assistant City Attorney, New Orleans, for Defendant/Appellant.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
LANDRIEU, Judge.
This suit arises from a worker's compensation claim made by plaintiff after his benefits were terminated by the City of New Orleans (City). The Worker's Compensation hearing officer found that the claimant suffered a work-related accident which rendered him disabled and entitled to benefits. We affirm.

FACTS
Leo Glynn was a fire fighter for the City of New Orleans until he retired in 1970. He returned to work for the City in fire prevention from 1971 through 1977 and again from 1979 until 1985. On August 6, 1985, Glynn injured his back while working for the City. *1114 He was diagnosed by Dr. Edmund Landry as having a secondary muscle strain which triggered degenerative arthritis of the thoracic spine with chronic back pain.
Dr. Landry initially prohibited Glynn from heavy lifting or carrying, repetitive bending, climbing, overhead work, frequent driving over rough terrain, and frequent entering and exiting vehicles. In 1986, Dr. Landry determined that Glynn could no longer work because of the extent of his physical limitations. Dr. Landry testified that the August 6, 1985, accident was the cause of Glynn's debilitating chronic back pain because it permanently aggravated a preexisting arthritic condition. In 1990, Dr. Landry documented that Glynn was still disabled and was not expected to improve.
Glynn received worker's compensation from the date of injury, August 6, 1985, until May 14, 1993, when his benefits were terminated. The City Attorney authorized the termination of benefits and contended that Glynn's ongoing disability was related to health conditions, and not the work related injury, and that Glynn was retired.
Glynn filed a worker's compensation action on June 23, 1993. The hearing officer found in favor of Glynn and awarded him supplemental earnings benefits (SEB) from the date of their termination. He also awarded Glynn attorney's fees, costs and legal interest. The City claims the hearing officer erred:
1. In finding Glynn was entitled to SEB;
2. In setting the benefits at the amount Glynn claimed as his average earnings;
3. By not allowing the issue of Glynn's retirement to be raised and not finding that SEB had been properly terminated because Glynn was retired; and
4. By awarding penalties and attorney's fees.

STANDARD OF REVIEW
In a workers' compensation case, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94) 630 So.2d 733, 737. The appellate court does not determine whether the lower court was right or wrong, but whether the fact finder's conclusion was a reasonable one after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987), on remand to, 513 So.2d 1235 (La.App. 4th Cir.1987), writ denied, 515 So.2d 1108 (La. 1987).

ASSIGNMENT OF ERROR NO. 1
The City claims that Glynn did not prove that he can no longer earn ninety percent of his pre-injury wages.[1] The injured party has the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount. Freeman v. Poulan/Weed Eater, 630 So.2d at 739. Once plaintiff makes a prima facie case of his inability to earn ninety percent of his pre-injury wages, the burden of proceeding with the evidence shifts to the employer, who can defeat or reduce benefits only by showing that the employee is earning less than he is "able to earn." Allen v. City of Shreveport, 618 So.2d 386, 389 (La.1993), on remand to, 626 So.2d 854 (La.App. 2d Cir.1993), writ granted, 93-2928 (La. 2/11/94) 634 So.2d 365, rev'd on other grounds, 93-2928 (La. 5/23/94) 637 So.2d 123.
The concept of supplemental earnings is based on a scheme for replacing lost earning capacity by measuring an injured worker's ability to earn wages in a competitive marketplace of workers. Id. A number of *1115 factors might affect a person's access to employment, such as general economic conditions of the area, age, education, and employment history. Pinkins v. Cardinal Wholesale Supply, Inc., 92-3081 (La. 5/24/93) 619 So.2d 52, 57. See Daigle v. Sherwin-Williams, 545 So.2d 1005 (La.1989).
We believe that the fact that Glynn is a sixty year old man with minimal education and physical limitations significantly hinders his being able to reenter the employment market. At the hearing, Glynn testified that he was unable to do the work he had done before and that new jobs offered to him involved heavy manual labor which he is medically prohibited from doing. Glynn asked the Fire Department to let him return to work for "light duty" but his request was denied.
The burden then shifted to the City to prove that Glynn could find some employment which would increase his earnings. However, the City failed to present any evidence that Glynn was offered work that he did not accept or that jobs were available within his capabilities that he did not seek. We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
The City claims the hearing officer erred in accepting Glynn's accounting of his average wages. Tax records were introduced to corroborate Glynn's testimony that in 1985 he earned $18,286.39 from the City, $3,113.00 working for Delgado City College and the International Training and Service Corporation, and $3,120.00 in state supplemental pay, totalling an annual income of $24,519.39. Glynn's additional revenues from employment other than the City and his state supplemental pay were properly included in his earnings to calculate his SEB. See Jones v. Orleans Parish School Board, 370 So.2d 677 (La.App. 4th Cir.1979). Because the City presented no contradictory evidence as to Glynn's earnings, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 3
The City asserts that the hearing officer's refusal to find that Glynn had retired and, accordingly, his benefits had properly terminated is an error. We disagree. The hearing officer found that Glynn was not retired as contemplated by the law.[2] A person who accepts tenured-based retirement benefits but does not withdraw from the work force is not retired. Allen v. City of Shreveport, 93-2928 (La. 5/23/94) 637 So.2d 123, 126. Except for a brief hiatus, Glynn had worked continuously for the City from 1979 until his accident. Accordingly, we agree with the hearing officer that Glynn was not retired and his benefits were not properly terminated. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 4
Glynn asserts that the hearing officer erred by awarding penalties and attorney's fees. Louisiana law allows for attorney's fees in La.Rev.Stat.Ann. 23:1201.2 (West Supp.1996) as follows:
"Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims."
Also, an employee is entitled to penalties if the employer fails to reasonably controvert the employee's rights to benefits. La. Rev. Stat.Ann. 23:1201(E) (West Supp.1996). The hearing officer found that the City "acted in an arbitrary and capricious manner." The award of penalties and attorney's fees in a workers' compensation case is based on a finding of fact and should not be disturbed *1116 unless it is clearly wrong. Lemoine v. Schwegmann Giant Supermarkets, Inc., 607 So.2d 708, 713 (La.App. 4th Cir.1992), writ denied, 609 So.2d 258 (La.1992). We find no error in amount awarded.
For all the above reasons, we affirm the hearing officer's finding.
AFFIRMED.
NOTES
[1] La.Rev.Stat.Ann. 23:1221(3)(a) (West Supp. 1996), in pertinent part, states:

"For injury resulting in the employee's inability to earn wages equal to ninety per cent [sic] or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly ages at time of injury and average monthly wages earned or average monthly wages employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason or education, training, and experience, such comparison to be made on a monthly basis...."
[2] La.Rev.Stat. art. 23:1221(3)(d) (West 1985) states, in pertinent part:

"(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate ...
(iii) When the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks."